## ST. LOUIS, I. M. & S. RY. CO. v. STATE.

### No. 3394.   Opinion Filed March 12, 1912.

#### (122 Pac. 217.)

**RAILROADS — Regulation — Orders of Corporation Commission.** ·The Corporation Commission of the state made an order requiring a railway company to construct a new depot at the town of N. on the site of the old one. The railway company petitioned to construct it on the block adjoining that site, setting up a number óf reasons showing its greater desirability from an operating standpoint, and that as a facility it would not only better serve the patrons of the road, but its location would be safer to people crossing the tracks and patronizing the company. The commission conceded in its order that, if considered from an operating standpoint alone, the claims of the company should outweigh any others advanced, but denied the petition, for the reasons that the citizens of N. objected to the removal of the depot, and claimed that the same was more conveniently located to the business and main portions of the city, and that property had been bought and values maintained because of its location, which values would be. materially disturbed in the event of removal. From such order appeal was taken, and it is held that the petition for modification should be granted because the considerations entertained and held controlling by the commission, and on whick it denied the prayer of the petition, were not such as were entitled to recognition, and offered no proper basis for the order made, which, under the established facts, was unreasonable and without legal sanction.

(Syllabus by the Court.)

*Appeal from the State Corporation Commission.*

Proceedings before the Corporation Commission against the St. Louis, Iron Mountain & Southern Railway Company. From an order of the commission, the railway company appeals. Reversed.

*W. E. Hemingway* and *Lovick P. Miles,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *Charles L. Moore,* Asst. Atty. Gen., for the State.

DUNN, J.  This case presents an appeal from an order of the Corporation Commission denying appellant's prayer for

modification of an order made August 11, 1909, in which said appellant was required to construct a new passenger depot in Nowata "where the present depot is now located." Another branch of this case is reported in 28 Okla. 372. On August 5, 1911, appellant filed its petition before the Corporation Commission, wherein it prayed for the privilege of changing the location of its said passenger station from the place where the present depot stands to the block lying south of the same; and as grounds therefor sets up in its petition that:

"Since the location of its present depot, now its present passenger station, the United States government has platted the town of Nowata, and said town has grown so that its present depot is located within the center of a block only 320 feet in length, at the north of which Delaware avenue intersects and at the south of which Cherokee avenue intersects petitioner's right of way, station grounds, and tracks, and said avenues are the principal and most traveled east and west streets leading to and from the business district of Nowata, and will continue so to be. Immediately south of Cherokee avenue, and extending to Modoc avenue, there is a solid block 600 feet in length, so platted by the United States government, and opposite the same petitioner owns right of way and station grounds 300 feet in width, upon which it desires to locate its new station, and there is no intervening street upon either side of said strip for such distance of 600 feet. Said strip fronts on Oak street, which is paved with brick for its full width, and for the entire distance between Delaware and Modoc avenues. Immediately north of Delaware avenue and within 230 feet of its present passenger depot, and upon the same side of main track, petitioner has located, and now maintains, its freight station pursuant to plans submitted to and approved by this honorable commission, and by the chamber of commerce, complainant herein, and its house and team tracks are necessarily maintained in connection therewith, and adjacent thereto, and partially in the rear of the present passenger depot. Present passenger trains consisting of six cars and engine average in length 420 feet, and with an increase of one coach, will average 480 feet, or 100 feet and 165 feet, respectively, more than the length of the block between Delaware and Cherokee avenues, opposite which the present passenger depot is located, and the length of trains and the density of traffic upon said avenues will increase, trains of nine cars being not uncommon upon the lines within Oklahoma. The new depot will be a building

191 feet in length, exclusive of platform, and the location desired will place the new building within only 355 feet of the south end of the present passenger depot, including the width of Cherokee avenue. Some of the advantages to the public and petitioner that will flow from the location now desired by petitioner are these: (a) No street in Nowata will be blocked wholly or partially by any passenger train of petitioner, whereas it is now impossible to avoid the partial blocking of both, or the entire blocking of either Delaware or Cherokee avenue, and the entire blocking of both will be necessary with longer trains. Delay and inconvenience to the public and the frightening of teams while waiting at blocked crossings will be avoided and danger to persons and property doubtless prevented. (b) North-bound trains will come to a full stop before reaching either Cherokee or Delaware avenue, the most used thoroughfares in the town, so that crossing accidents from north-bound trains will be less likely to occur, while as to south-bound trains with no intervening building 191 feet in length to obstruct the view on the west travelers on Cherokee avenue and enginemen on south-bound trains both freight and passenger will have better opportunity to see danger and avoid accidents. (c) South-bound freight trains stopping at Nowata for orders clear both Delaware and Cherokee avenues, and no blocking of either crossing of necessity for cutting trains of petitioner will result. (d) The freight station, team and house tracks, near to and the latter partially in the rear of the present passenger depot, would make access to the new passenger depot more difficult, and switching, engine, and car movement, which are frequently going on at train time, will be a source of constant danger to teams and pedestrians going to and from the new station. At the desired location, this inconvenience and danger will be minimized. (e) From the point of civic pride, the new depot upon the old site will be hidden from view by intervening box cars upon the team track, it will be subject to receiving the most dust from teaming operations, and parking and beautifying the grounds will be impossible. The town and petitioner will have a $17,000 'light' hidden under a 'bushel' of box cars and a burden of dust. (f) It will be observed from the examination of the proposed location plans that the total length of proposed platform, present (300 feet) and as necessity shall require, contemplates a total ultimate length of 600 feet, whereas 300 feet is, and will be, the total of possible ultimate length, without unloading and loading either passengers or mail, baggage, and express in the public street, something which petitioner can have no right, nor should it be permitted, to

do. (g) The present location will limit petitioner for passenger facilities, regardless of the growth of the town of Nowata, to the area between Delaware and Cherokee avenues, 320 feet, whereas, there will be 600 feet in length in and adjacent to the location desired by petitioner. (h) Futhermore, it will be observed ,that at the desired location, baggage wagons, express wagons, private and public conveyances will have much greater area for their use, and will be less congested than will be the case with a 191-foot passenger station, placed between Delaware and Cherokee avenues, and between the main track and the house and team tracks of petitioner, the plans calling for a 24-foot wide station platform and a building of a maximum width of 30 feet."

The appellant introduced the testimony of its superintendent, who was familiar with the conditions at Nowata, and who fully sustained the averments and statements of fact contained in its petition. A number of witnesses of the city, without controverting or denying the claims of appellant, testified, in substance, that a large majority of the citizens of the city desired the depot located on the present site for the reason that it would be more convenient to some of them, also that the city had been built up with reference to its location at that place, and that property values would be affected in the event of a change. On this testimony and taking these conclusions to be true, the commission in its report said:

"The reason set forth by the railroad company is that the block where the depot is now located is only 300 feet wide, while the block where it is desired to be located is 600 feet wide, and that it could stop its passenger trains on the proposed location without interfering with any streets; that it could operate its trains more conveniently and with less annoyance to the public. There is much merit in this contention, and, if considered from an operating standpoint alone, this contention should outweigh any others advanced. The citizens of Nowata strenuously object to the removal of the depot. They claim it is now more conveniently located to the business and main portions of the city, that property was bought and values maintained because of the location of the depot, and that these values would be materially disturbed. The city council unanimously passed resolutions against the removal of the depot. Upon the filing of this application, a member of the commisison went to Nowata, and made an investigation, and heard evidence as to the various conten-

tions. The objections of the citizens were practically unanimous. The railroad company should have made its application when the case was first heard, so that it could have been presented to the commission and the Supreme Court, in connection with the other considerations in the case. The blocking of a street by a passenger train is only for a very short time. The law of the state and most city ordinances permit the blocking of a street ten minutes. We feel sure that the citizens of Nowata will not complain of a passenger train stopping in the street, and by putting the new depot where the old depot is now located the railroad has the unanimous sentiment and good feeling of the citizens of Nowata, which is a very valuable asset for any public service utility to have, and especially in view of a competing road now coming into Nowata. To place the depot where it is proposed to be located by the railroad company would make it further from the freight depot, and when all the conveniences and advantages are considered, and the loss that the citizens would sustain in the change of values of property, the application of the railway company to change the location of the depot should not be approved. This application was presented in good faith by the railway company, and its contentions under ordinary conditions would have been sustained, and it was only denied after due consideration and a greater length of time has been devoted to the same than most cases that come before the commission."

From the foregoing it will be seen that the commission, taking into consideration only the claim of appellant that it could stop its passenger trains at the proposed location without interfering with any of the streets, and that it could operate its trains with less annoyance to the public, and without considering any of the balance, said:

"There is much merit in this contention, and, if considered from an operating standpoint alone, the contention should outweigh any others advanced," and that "the railroad company should have made its application when the case was first heard so that it could have been presented to the commission, and the Supreme Court, in connection with the other considerations in the case," and that "its contentions under ordinary conditions would have been sustained, and were only denied after due consideration and a greater length of time had been devoted to the same than in most cases," etc.

The application appears to have been denied because the citizens of Nowata objected to the removal, because the depot is

more conveniently located to the business and main portions of the city, that property was bought and values maintained because of the location thereof, and that these values would be materially disturbed if its location was changed. From the conclusions thus reached the railway company has appealed to this court.

The first two assignments of error are that the order of the commission in overruling the petition of appellant was unsupported by sufficent evidence; and, second, the action of the commission in overruling said petition of the appellant was arbitrary and unreasonable. In the absence of a lawful order from competent authority, there can be no doubt of the company's full right to place the depot wherever it desires. The Corporation Commission is a body of special and limited jurisdiction, and its authority to exercise the power here called in question must be found in the charter of its creation. Section 18 of article 9 of the Constitution sets forth the jurisdiction and power which the ·commission has in supervising, regulating, or controlling transportation and transmission companies doing business in the state, and is as follows:

"The commission shall have the power and authority and be charged with the duty of supervising, regulating, and controlling all transportation and transmission companies doing business in this state, in all matters relating to the performance of their public duties and their charges therefor and of correcting abuses and preventing unjust discrimination. and extortion by such companies and to that ·end the commission shall, from time to time, prescribe and enforce against such companies, in the manner hereinafter authorized, such rates, charges, classifications of traffic, and rules and regulations, and shall require them to establish and maintain all. such public service facilities, and conveniences as may be reasonable and just, which said rates, charges, classifications, rules, regulations, and requirements, the commission may, from time to time, alter or amend."

From the foregoing it is to be noted that the commission is vested with the power of regulating and controlling a railway company in all matters relating to the performance of its public duties. The public duties of the appellant. in reference to its depot facilities are set forth in section 26 of article 9 of the Con-

stitution, in which it is required to provide and maintain adequate, comfortable, and clean depots and depot buildings at its several stations for the accommodation of passengers which shall be kept comfortable for the accommodation of the traveling public. Therefore as a part of the public duties which the railway company may be compelled to perform and which the Corporation Commission is vested with the power and jurisdiction to require is that the company shall maintain adequate depot facilities which shall accord with the requirements above set forth. The location of a depot which is a public service facility is a part of the facility, and without doubt it is such a part of it that the Corporation Commission can, where it is for the benefit and interest of the traveling and railroad-using public, require the construction of the same at such place as in the reasonable exercise of its judgment most nearly meets those requirements; and the only challenge which can be successfully made against the exercise of that authority is one which would compel the conclusion that the order made was unreasonable and unjust when considered in the light of the needs and demands of persons rightfully using the depot. Therefore the facts and elements to be taken into consideration by the Corporation Commission in determining the location of the depot of a railway company must be those which relate to and deal with the considerations above set forth. If the considerations referred to are ignored, or, if considered, are held to be subordinate and other elements are considered as paramount, which are aside from either the public duties or the interests of the traveling public, or the necessities of the operation of the trains, then an order made with the latter for its basis must be held to be unreasonable and without legal sanction. See *A., T. & S. F. Ry. Co. v. State et al.*, 28 Okla. 797, 115 Pac. 872; *A., T. & S. F. Ry. Co. et al. v. Interstate Commerce Commission, etc.* (Com. C.) 190 Fed. 591; *Southern Pac. Co. v. Interstate Commerce Commission*, 219 U. S. 433, 31 Sup. Ct. 288, 55 L. Ed. 283; *People ex rel. New York, N. H. & H. R. Co. v. Willcox et al.*, 200 N. Y. 423, 94 N. E. 212; *Interstate Commerce Commission v. Union Pacific R. Co. et al.*, 222 U. S. 541, 32 Sup. Ct. 108,

an opinion by the Supreme Court of the United States delivered January 9, 1912.

The case of *A., T. & S. F. Ry. Co. v. State, supra,* was one wherein certain citizens of the city of Woodward filed complaint before the Corporation Commission praying an order requiring the railway company to remove certain obstructions which it had placed on its right of way at a point where it was sought to open certain streets of that city. On the making of the order the railway company appealed to this court, and in the consideration of section 20 of article 9 of the Constitution, which provides for appeals from the Corporation Commission, and which allows the same from any order requiring additional facilities, conveniences, or public service, this court, denying the appeal, speaking through Mr. Justice Kane, said:

"With the abuses complained of, the public as patrons of the railway company have no concern. It is true that the general public and particularly the residents of the city of Woodward have a right to the free use of all duly dedicated streets and public highways within the city, but, unless the action before the Corporation Commission concerns additional facilities, conveniences, or public service within the meaning of those terms as used in section 20, *supra,* an appeal does not lie to this court from an order entered therein."

Again, the Public Service Commission of the state of New York was established by Laws 1907, c. 429. Section 45 thereof specified its general powers to be as follows:

"The general supervision of all common carriers, and to have the power to examine the same, and to keep informed as to their general condition and the manner in which their lines are managed, not only with respect to the adequacy, security, and accommodation afforded by their service, but also with respect to their compliance with all provisions of law, orders of the commission, and charter requirements."

The case of *People ex rel. New York, N. H. & H. R. Co. v. Willcox et al., supra,* was one wherein the commission made an order requiring the railway company to abolish a certain unsanitary nuisance which it maintained and used in loading and carrying away offal in its Harlem river yards. The Court of Appeals of New York in holding that the powers conferred upon the com-

mission were for the purpose of enabling it to require the regula-
tion, management, and operation of carriers in the interest of the
public and for the persons using their facilities for the transporta-
tion of themselves or of their property, and that the abatement of
a nuisance affecting the health and comfort of the locality where
maintained was not within the jurisdiction of the commission,
speaking through Mr. Justice Gray, said:

"Broad as are the powers conferred by the act, they are by
plain intendment, as I read them, such as are directed, exclusively,
to the amplest supervision and regulation of railroad corpora-
tions, in such respects as concern their construction, main-
tenance,, equipment, terminal facilities, and operations in the
transportation of persons and property. The exercise of the
powers is intended to be when rendered necessary, in the judg-
ment of the commission, by reason of unjust, unsafe, or inade-
quate regulations, practices, equipment, appliances, or service, 'in
respect to the transportation of persons, freight, or property.'
The object of the Legislature, as fairly to be deduced from its en-
actment, was to regulate the management and the operations of
common carriers within the state in the interest of the public; that
is, of the persons who should use the facilities for the transporta-
tion of themselves, or of their property, who should serve them,
or who should be interested in them, as holders of their capital
stock or obligations. The commissions were given extensive pow-
ers; but they should not be extended by implication beyond what
may be necessary for their just and reasonable execution. They
are not without limits, when directed against the management or
operations of railroads and the commissions cannot enforce a pro-
vision of law, unless the authority to do so can be found in the
statute. See *Village of Ft. Edward v. Hudson Valley Ry. Co.,*
192 N. Y. 139, 84 N. E. 962; *People ex rel. South Shore Trac-
tion Co. v. Willcox,* 196 N. Y. 212, 89 N. E. 459; *People ex rel.
D. & H. Co. v. Stevens,* 197 N. Y. 1, 90 N. E. 60. Nor should
they reach out for dominion over matters not clearly within the
statute. The 'provisions of law' which section 45 refers to are
obviously only those which the public service law contained. The
section would have been very differently framed, if, by 'pro-
visions of law,' all the provisions of the statute or common law
were meant, and the commissions were to be general agencies
for the prosecution, generally, of violations."

Each of the cases from which we have quoted above was one
wherein the power and authority of the commission was invoked

and exercised in reference to a matter and on account of consid-
erations which the court in effect held were outside of their juris-
diction. ˙If the railroad crossings or the nuisance referred to were
dangerous to life, property, or health of the patrons of the rail-
way companies, or those who were calling into exercise their pub-
lic duties, then as˙a part of the regulation of the companies in the
discharge of these duties the commission.would have authority to
grant the relief prayed.   In short, the jurisdiction of the com-
mission is limited to those things which the law requires the rail-
way companies to perform for those who deal with them as
agencies of transportation.   In other words, in the cases to which
we have last referred, if it had been shown that the crossings de-
sired were essential for the use of the patrons of the railway com-
pany, or that the nuisance referred to interfered with either the
operation of trains or service to the patrons of the railways, then
jurisdiction existed to correct any abuse in connection therewith,
and for the reasons stated.   A case illustrative of this principle
which appears more clearly akin to the proposition here declared
is that of *A., T. & S. F. Ry. Co. et al. v. Interstate Commerce
Commission, etc., supra,* delivered by the commerce court October
15, 1911.   It appears that the Atchison, Topeka & Santa Fe Rail-
way Company and certain other lines brought injunction against
the enforcement of an order of the Interstate Commerce Commis-
sion   Certain shippers of lemons and oranges from California
made complaint to the Interstate Commerce Commission with ref-
erence to rates on lemons and oranges which they claimed were
unreasonably high, whereupon the commission reduced the rate
for the purpose of enabling the California growers to successfully
compete with foreign competition in the East in the sale of their
fruits.   In granting a permanent injunction restraining the en-
forcement of the order as to the lemons, the court, speaking
through Judge Mack, said:

    "The first and decisive ground of attack is that the order 'is
without the scope of the delegated authority under which it pur-
ports to have been made' (*I. C. C. v. Ill. Centr. R. R. Co.,* 215
U. S. 452, 470, 30 Sup. Ct. 155, 54 L. Ed. 280), in this: that,
while in form holding the $1.15 rate unreasonable and prescrib-
ing the $1 rate as reasonable, in substance the commission did not

determine the intrinsic reasonableness of either rate, but reduced the rate prescribed by the railroads in order that, and to a point at which, in its judgment, the California growers might successfully compete with their Sicilian competitors in a broader market than would otherwise be possible; in other words, that the commission acted upon the erroneous assumption that it had the power and the right, if not the duty, so to adjust railroad rates as would give the American industry protection against foreign competition. * * * The authority granted it under section 15 of the act to regulate commerce to prescribe reasonable rates when it shall be of the opinion that the rates fixed by the carrier are unreasonable does not confer absolute or arbitrary power to act on any consideration which the commission may deem best for the public, the shipper, and the carrier. Its order must be based on transportation considerations. While it may give weight to all factors bearing either on the cost or the value of the transportation services, it must disregard as well the demand of the shipper for protection from legitimate competition, domestic or foreign, for unlimited markets, or for the enforcement of equitable estoppels arising from a justifiable expectation that past rates will be maintained, as the demand of the carrier for the maximum rate under which the traffic will move freely. An examination of the report of the commission reproduced so far as it bears on the lemon rate in its entirety demonstrates that, except for two brief paragraphs suggesting grounds for lowering the lemon while maintaining the orange rate, it deals entirely with matters tending to show the need in this industry of a high protective tariff against Sicily, and not on traffic considerations, but to compensate for the tariff insufficiencies, a low transportation rate, especially to Eastern territory. * * * As in our judgment the order is based primarily on the assumed authority to protect the industry against foreign competition, it must be held void as beyond the powers delegated to the commission."

In the hearing had and the order made in the case at bar the public duties of the railway company as regards their patrons was apparently lost sight of, because as was found by the commission:

"The citizens of Nowata strenuously object to the removal of the depot. They claim it is now more conveniently located to the business and main portions of the city, that property was bought and values maintained because of the location of the depot, and that these values would be materially disturbed. The city council unanimously passed resolutions against the removal of the depot."

St. Louis, I. M. & S. Ry. Co. v. State.

The foregoing finding was put against a finding that, if the contention of the company was considered from an operating standpoint alone, it should outweigh any others advanced, but it seems that, on account of the present location of the depot, property was bought and the value thereof maintained because of its location, which would be disturbed if it were moved. The merit of the location from an operating standpoint must yield to these other considerations. In this we are unable to concur. Railroad depots and their locations are public facilities for the use and convenience of the people having business to transact with the companies, and the wishes of other people or the fact that they purchased property in reference to the location of the depot is absolutely of no consequence whatsoever in locating or relocating it. No property owner can acquire a vested right in the location of a depot, and as these considerations were the primary ones affecting the action of the commission in this instance, and not being competent to be considered, they must be eliminated from the case, leaving alone what the commission concedes should outweigh any others advanced.

The contentions of the railway company and the evidence which was offered to support them stand in the record undenied, and these in our judgment offer reasons sufficient, without reiteration or discussion, to require allowance of amendment of the order requested. The advantages of the new location from an operating standpoint, as well as the safety of the patrons of the road, seem to us to be overwhelming. The building to be constructed will doubtless stand for generations, and its advantages will be remembered, appreciated, and enjoyed long after all who have participated in this controversy, either as citizens, litigants, or officials, shall have passed to realms where transportation problems or real estate values will no longer concern us. With these considerations controlling, the order of the commission denying appellant's prayer is reversed.

All the Justices concur.