## MISSOURI, K. & T. RY. CO. *et al.* v. STATE *et al.*

No. 4055.   Opinion Filed March 11, 1913.

Rehearing Denied June 24, 1913.

(133 Pac. 35.)

1.   **RAILROADS—Regulation—Corporation Commission—Station Facilities—Sufficiency of Evidence.** Evidence examined, and held sufficient to support the findings of the commission to the effect that the present union station facilities at Durant are inadequate, and that the population of the city, its importance as a business center and the passenger business of the railways entering it, and the receipts derived therefrom, all justify a union station of the character required by the order appealed from.

2.   **SAME—Reasonableness of Order.** In a proceeding before the Corporation Commission, wherein is involved the selection of a site for a union station at a populous city having three railways, the question of the safety of the employees and patrons of the railways affected should be paramount, and if on appeal it appears from the record that it has been ignored, or, if considered, held to be subordinate to another consideration which affects only certain operating difficulties of an ordinary nature of one of the railways, an order of the commission with the latter as a basis must be held to be unreasonable.

(Syllabus by the Court.)

*Appeal from the State Corporation Commission.*

An order was entered by the Corporation Commission requiring the Missouri, Kansas & Texas Railway Company and others to build a joint passenger depot within the City of Durant, and the company named and another appeal. Modified and remanded.

*Clifford L. Jackson, W. R. Allen,* and *M. D. Green,* for appellant Missouri, K. & T. Ry. Co.

*W. F. Evans, R. A. Kleinschmidt,* and *Fred E. Suits,* for appellant St. Louis & S. F. R. Co.

*Chas. West, Atty. Gen.,* and *Chas. L. Moore,* Asst. Atty. Gen., for the State.

*E. R. Jones* and *J. C. Wilhoit* (*Alexander New* and *Arthur Miller*, of counsel), for appellee Missouri, O. & G. Ry. Co.

KANE, J.   This proceeding comes before this court upon an appeal from an order of the Corporation Commission, which requires the Missouri, Kansas & Texas Railway Company, the St. Louis & San Francisco Railroad Company, and the Missouri, Oklahoma & Gulf Railway Company to build a joint passenger depot at a convenient point for each of said lines within the city of Durant. Upon the hearing before it the commission, among others, made the following finding:

"It appears to be conceded by all the witnesses that the depot now used by the Katy and Frisco would be inadequate to serve all three roads.   There is a block of tracks and the M., O. & G. tracks, which roads at that point run nearly north and south.   The Frisco crosses both the Katy and the M., O. & G., and its right of way forms the south line of this tract. All of the land between these two roads is owned by the Katy, Frisco, and M., O. & G., with the possible exception of one lot or parts of two lots which lie in the southeast corner next to the tracks of the M., O. & G. Railway.   The Katy right of way is sufficient to furnish its part of the ground for the union depot on the proposed site.   It may be necessary for the other road to acquire the parts of the lots above mentioned.   The present location of the union depot at Durant could be not be made as convenient for the public generally as a location at the triangle above described.   The main street of Durant crosses the main line of the Katy and forms the north line of the ground where the present depot is to be located, that is, the location is between the main street on the north and Frisco on the south, the Katy on the west, and the M., O. & G. on the east."

The order issued by the Commission is as follows:

"It is therefore ordered that the defendants, the Missouri, Kansas & Texas Railway, the St. Louis & San Francisco Railroad, and the Missouri, Oklahoma & Gulf Railway Companies, shall build and operate a joint or union passenger depot in the town of Durant, to be located east of the tracks of the Missouri, Kansas & Texas Railway, immediately north of the tracks of the St. Louis & San Francisco Railroad, and west of the tracks of the Missouri, Oklahoma &

Gulf Railway and south of Main street, at a point to be agreed upon by all of the defendants and the city council of Durant. If the exact location cannot be agreed upon by the complainants and the defendants, the commission will designate the particular location."

The appellants assign various grounds upon which they contend the order of the commission ought to be reversed, but owing to the conclusion we have reached it is necessary to notice only one of them: "The order of the Corporation Commission is unreasonable and unjust, and therefore unconstitutional."

In *M., O. & G. R. Co. v. State,* 29 Okla. 640, 119 Pac. 117, an order of the Corporation Commission was affirmed, compelling the three railroads herein named to operate a joint passenger depot at the city of Durant at the present site of the depot used by the St. Louis & San Francisco Railroad Company, and the Missouri, Kansas & Texas Railway Company, suitable for the accommodation of the passenger traffic into and out of said city. The present order was made on account of the inadequacy of that depot to meet the requirements of the traveling public, and to overcome certain operating difficulties which the former order imposed upon the Missouri, Oklahoma & Gulf Railway Company. The finding of the commission in the instant case, to the effect that the present depot is entirely inadequate for the accommodation of the traveling public, and that the population of the city of Durant, its importance as a business center, and the passenger business of the railroads at that point, and their receipts therefrom, all justify a union depot of the character required by the order, is fully sustained by the evidence. But in the selection of a site for the new station there is a paramount consideration to which due weight has not been given, which, in our judgment, renders unreasonable that part of the order which requires the new union station to be erected at the point designated, and that is the increased hazard to life and limb to which its enforcement would necessarily

subject the employees and patrons of the railroads involved. From the findings of the commission and the plat herein set out, it appears that the site selected is situated in a *cul de sac* formed by the three railways, and that in order to reach the proposed station from any part of the city it would be necessary to cross the main line of at least one of the railways. This, in itself, would create a very dangerous situation.

But this is not all. The plat indicates the situation of the three railways, the location of the present station, and also the proposed site. The undisputed evidence shows that the Missouri, Kansas & Texas Railway Company operates double main-line tracks through the city, the west track for its southbound trains and the east track for its north-bound trains. Practically all of the principal business houses of the city are located north of the Frisco and west of the Katy tracks. All of the schools, of which there are six or seven of various grades, except a primary ward school are west of the Katy tracks, and there is substantial agreement between the witnesses that from 75 to 90 per cent. of the inhabitants of the city reside west of the Katy tracks; the great majority of this number residing north of the Frisco. Eight passenger trains daily pass through Durant over the Katy and four over the Frisco, and a less number over the Missouri, Oklahoma & Gulf. It is also shown that the Missouri, Kansas & Texas handles a large proportion of the passenger traffic in and out

of Durant, that the Frisco is second in that respect, and the Missouri, Oklahoma & Gulf runs but few trains, and handles a comparatively small proportion of the business. It thus appears that if the union station is located on the proposed site a majority of the traveling public would be required to cross the Katy main lines in going to and from it; that a smaller number would be required to cross both the Katy and the Frisco; and that only a very small number residing east of the Missouri, Oklahoma & Gulf would be accommodated. That this would materially increase the hazard of a great majority of the traveling public goes without saying. All of the witnesses concede that the crossing of the Katy tracks would be very hazardous; the citizens of Durant, on this point, agree with the representatives of the railroads.

Mr. Whale, a citizen of Durant, engaged in the real estate and loan business, testified as follows:

"Q. Mr. Whale, now taking into consideration the interests of the M., O. & G., the M., K. & T., the Frisco, and the people together, where would you say would be the most practical and desirable location, giving everybody due consideration? A. The present location, decidedly so to my mind. Q. Why would you say so? A. Well, for this reason: I don't think that— I feel like, in the first place, the interests of the citizens and the lives of the citizens should be protected. Whenever we put that depot across the Katy, it is going to cause the loss of somebody's life, and we don't know how many, because when it is once located there it is going to be located there for quite a number of years, and there is practically 90 per cent. of the travel from the west side of the town. I think the present location would be decidedly to the best interests of the town and the citizens."

Mr. E. T. Rines, president of the First National Bank of Durant, testified as follows:

"Q. Go ahead and tell the commission what you think about it. A. Why, the present location is on the west side of the M., K. & T. tracks and north of the Frisco, and the town of Durant has grown up and built with the location of the station there, and consequently the business interests and the majority

of the population are on that side of the triangle, and, in my opinion, it is the logical place for the station, for the reason if it is moved across there the traveling public will have to cross the main line and the freight switch on this side to reach this spot of ground where the location is proposed, and by doing so would be greater inconvenienced, and it would be very dangerous."

Mr. T. L. Cox, engaged in the ginning business at Durant, testified:

"Q. What objection could you find to the building of a depot north of the Frisco, west of the M., O. & G., and east of the Katy an equal distance from each road, except that passengers would have in getting to the depot, the majority of them, to cross the Katy tracks? That would be the only objection, wouldn't it? A. That is the only objection; yes, sir. Q. Now, then, with a watchman there, and the fact that when people go to the passenger depot they go as passengers, and the freight trains are not passing about the time of the passenger trains, with a watchman there, wouldn't the danger be a minimum? A. Well, it minimizes it to an extent; yes, sir. Now, Mr. Hayes, the Katy Railway through here is not to be compared with the others in point of danger, because they have got double tracks; that makes it more hazardous at crossing, and they have got more business, more trains."

Mr. E. Ringer, assistant chief engineer of the Missouri, Kansas & Texas Railway Company, testified as follows:

"Q. From an operating standpoint, the only reason you can think of that it should not be done is that it would be inconvenient? A. Inconvenient I don't think is the word. I think it would be an added element of danger to every passenger crossing."

The foregoing excerpts from the evidence are but an epitome of the whole record on the question of the desirability of the selected site from the standpoint of safety. So we may say that it is established beyond peradventure that erecting the union depot on the east side of the Katy tracks, at or near the proposed point, would greatly increase the hazard of the employees and patrons of the railways involved. The only consideration that can be urged to offset this extra hazard is that the erection of a

union station upon the proposed site would overcome some operating difficulties of the Missouri, Oklahoma & Gulf in the way of getting into and out of the present union station, imposed upon it by the former order of the commission. · The evidence tends to show that the operating inconveniences imposed are not of an unusual or difficult nature; that many railways are required to do the same thing in order to reach union stations in other cities; and that the only substantial drawback directly attributable thereto is that the consumption of time required makes it necessary to have a somewhat slower schedule for its through trains. In our judgment this consideration should have no weight as against the personal safety of the employees and patrons of the respective roads. In *St. L. & I. M. Ry. Co. v. State,* 31 Okla. 509, 122 Pac. 217, Mr. Justice Dunn, after detailing some of the facts and elements to be taken into consideration by the Corporation Commission in determining the location of a railway station, among which safety is given a commanding position, says:

"If the considerations referred to are ignored, or, if considered, are held to be subordinate, and other elements are considered as paramount, which are aside from either the public duties, or the interests of the traveling public, or the necessities of the operation of the trains, then an order made with the latter for its basis must be held to be unreasonable and without legal sanction."

The destruction of life and limb upon American railways had almost become a scandal before any systematic move was made to remedy the evil. For some time past the railways and other common carriers of passengers have been giving the question of the safety of their employees and patrons the concerted attention its paramount importance demands, and it may be said in passing that several state corporation commissions, among them our own, and other tribunals having jurisdiction over the regulation of the affairs of common carriers in relation to their public duties, have greatly facilitated this humane work. We are in entire accord with this great movement which, in the manage-

ment of our great passenger-carrying public service corporations, seeks to place safety above utility. It is well for the railroads to provide fast schedules for through trains, and every reasonable aid should be extended for the attainment of that purpose; but safety never should be subordinated to speed.

For the reasons stated, we are of the opinion that the order of the commission, in so far as it requires the union station to be constructed on the proposed site, is unreasonable and unjust. It is clear to us that a union station should not be located east of the Katy tracks until some provision is made whereby it may be used by the traveling public without greatly increasing the present hazard. The order of the commission is therefore modified, as herein indicated, and the cause remanded, with directions to take such further action in the premises, not inconsistent with this opinion, as may be necessary.

HAYES, C. J., and DUNN and TURNER, JJ., concur; WILLIAMS, J., absent, and not participating.