KANSAS CITY SOUTHERN RY. CO. v. REDWINE *et al.*

No. 5872.    Opinion Filed October 13, 1914.

(143 Pac. 847.)

**RAILROADS—Location of Depot—Order of Corporation Commission—Validity—Evidence.** The Corporation Commission of the state made an order requiring the railway company to move its freight depot to the side of the track next to the town. The company complied with the order removing the freight depot, and appealed from the order as to the other requirements. Held, that the evidence justified the order in requiring the construction of a new passenger depot, but that the safety of the traveling public and the employees would be best served by the location of the depot as proposed by the company, and that under the facts and circumstances in this case the order requiring the location of the depot on the side of the railroad next to the town is unreasonable and without legal sanction.

(Syllabus by the Court.)

Kane, C. J. dissenting.

*Appeal from State Corporation Commission.*

On application of R. L. Redwine and others, the Corporation Commission issued an order, from which the Kansas City Southern Railway Company appeals.    Modified.

*Cottingham & Bledsoe* and *James B. McDonough,* for plaintiff in error.

*Charles West,* Atty. Gen., and *Charles L. Moore,* Asst. Atty. Gen., for defendants in error.

LOOFBOURROW, J.    On July 7, 1913, the Corporation Commission of Oklahoma made the following order:

"It is hereby ordered by the Corporation Commission of Oklahoma, that the Kansas City Southern Railway Company move its freight depot at Spiro, Oklahoma, across on the opposite side of the tracks on the side of the railroad next to the business side of the town.    Also to build a new passenger depot

at Spiro, the same to be located on the side of its railroad next to the town of Spiro, Oklahoma, all to be completed by November 1, 1913."

From that portion of the order directing the construction and location of a new passenger depot at Spiro on the side of its railroad next to the town, the railway company appeals.

From the evidence in this case it appears that Spiro is a town of from 1,200 to 1,500 inhabitants, and that all of the town is situated on the west side of the main line of the Kansas City Southern Railway. On this main line the Kansas City Southern daily operates four through passenger trains. The Kansas City Southern has a branch line from Spiro to Ft. Smith, and each of the through trains on the main line is met at Spiro by one of its trains from Ft. Smith; the branch line train that arrives to meet each through train counts as one train, and the train that leaves Spiro going back to Ft. Smith as each through train departs is another train, thereby making twelve passenger trains daily to handle this passenger traffic. In addition thereto there are two Kansas City Southern passenger trains running between Ft. Smith and Mena, Ark., which pass through Spiro. In addition to this the Ft. Smith & Western Railway Company operates two passenger trains westward and two eastward through Spiro, to and from Ft. Smith, over the Kansas City Southern Railway Company tracks, thereby making eighteen passenger trains daily for the town of Spiro. While the trains on the branch line on the Kansas City Southern are counted as eight trains, four in and four out, if they are counted as only four trains, assuming that the same train that comes in makes the round trip from Ft. Smith, there would still be fourteen passenger trains. In addition to this, there are the usual number of freight trains necessary to handle that feature of the traffic. The following plat shows the location of the tracks and the location of the passenger station as proposed by the railroad company:

Under the present conditions it is necessary for the citizens of Spiro to cross four tracks to get to the passenger depot. The company has moved its freight depot as required by the order to the west side of the track, and they propose to locate the new passenger depot inside the "Y" on the east side of the main line, and to construct a building adequate for the accommodation

necessary at a point of that importance, and propose to eliminate two of the four tracks now between the town and the depot, and construct a concrete sidewalk leading from the town over to the railway company's property and tracks to the depot for the accommodation of the town of Spiro. It is shown by the testimony that more than 500 people are transferred daily from the main line to the branch line and *vice versa;* that a great many more passengers are transferred at Spiro than take passage to or from Spiro. It also appears from the testimony that they have what is called momentum grades, both north and south of the town on the main line, and that the trains have to run for the hill when going out of the bottoms; that they frequently have freight trains consisting of 80 to 90 cars and the passing track standard is a length of 3,500 feet; that at the present time there is just room for a train of standard or ordinary lengths to stand between the south switch and the break in the grade south, and the same condition exists in the north; and that if the yard is pushed either north or south, the space is relatively shortened, and it thereby makes it useless to attempt to stop freight trains outside of the yard and throw the switch to come into town; that the grade cannot be pulled; it is therefore not practical, on account of the grade, to have the passing track extended any further than it is now. Under present conditions in railroading it is necessary to have passing tracks every few miles, and it appears that there is such a passing track four or five miles to the south of Spiro and about the same distance to the north, but the passenger and freight traffic at this point make the passing tracks indispensable at Spiro. Three or four passenger trains may frequently be at Spiro at the same time; the main line train must stop at the station, and, under the present and proposed arrangement of the company, passengers getting off of the main line or either leg of the "Y" on the branch line may transfer without crossing any tracks. If the depot is placed upon the west or town side of the track, in order that persons coming from the town shall not be required to cross the track, transferring passengers must cross the main line to get to and from the depot, or trains coming from Ft. Smith on the branch

line would have to come in on one or the other leg of the "Y" onto the main line and back into the depot, and Ft. Smith and Western trains would run in on the main line and back up and run out on the "Y" to Ft. Smith. Then it would probably be necessary for the company to construct half a dozen or more tracks on the east side of the depot to accommodate the passenger and freight trains which will be there at the same time; and Spiro, as well as transferring passengers taking any train other than the one upon the first track, would then have to pass over tracks in front or to the rear of one or more trains, which would greatly increase the probability of accidents to persons transferring at Spiro, especially passengers who are not accustomed to travel, who are usually in a great hurry to get upon their train, being more or less excited and not in a condition of mind to exercise the degree of caution necessary for their own protection. If the depot is located as proposed by the company, then the transferring passengers will have no track to cross, while the citizens of Spiro will have tracks to cross; in most instances they will be familiar with the location of tracks, the train schedule, and other local conditions. And since the number of transferring passengers greatly exceeds those whose passage initiates at Spiro, the location of the depot within the "Y," as proposed by the company, is much more practical and much less dangerous to the traveling public than if it were placed on the west or town side of the main line. It is in exceptional instances that depots are so situated that at least a portion of the inhabitants of the town do not have to cross the tracks in order to get to the depot, and very seldom that a railroad is so located that a depot may be so placed that all the inhabitants of the town will have access thereto without crossing any tracks. If, in the operation of this road at Spiro, the danger to the traveling public becomes sufficiently hazardous, then the company may be required to keep a watchman at the crossing, or to provide gates for the convenience and safety of the public.

The appellant resists any material changes being made in the depot facilities at Spiro, for the reason that within the past eight years, from time to time, the Kansas City Southern has

made certain surveys and estimates as to the feasibility of the construction of a road from some point on its present line through Sallisaw to Ft. Smith, thereby placing Ft. Smith on the main line, and contends that if this should be done, it would have no use for such improvements as the Corporation Commission has required it to make at Spiro. There is no merit in this contention. This state is checkered with railroad surveys, and, in many places, there are even completed railroad grades, the placid bosoms of which have never experienced the tingling vibration of a real train. Life is too short to justify the delay of performance of any good act until the construction of any proposed railroad in Oklahoma.

However, counsel for appellant have concluded their brief with this statement:

"As before urged, we may leave out of consideration every argument of cost, inconvenience, and expense, and consider only the matter of safety to the public."

Applying this test, we feel that there is but one question before us, and that is the location of the depot. Counsel for the state cite *St. L., I. M. & S. Ry. Co. v. State,* 31 Okla. 509, 122 Pac. 217, and *M., K. & T. Ry. Co. v. State,* 38 Okla. 401, 133 Pac. 35, cases involving the location of depots, but, by reason of the many elements that enter into the solution of a problem of this character and the varying conditions between given points, they are such that each case must depend entirely upon the facts involved therein. We do not feel that either of the cases cited can control this case. The primary question to be considered in the location of a railway company's yards, tracks, or stations is the safety to the public traveling on the railroad and to that portion of the public having occasion to cross the tracks and the safety to the railroad employees. While difficulties of operation and cost of construction are factors entitled to consideration, they are necessarily secondary. Of course it is impossible to eliminate every possibility of injury in the operation of a railroad, and, after carefully considering the evidence and examining the briefs of counsel, we are of opinion that the best interests and safety of the traveling public will be

best served by the location of the depot within the "Y," as proposed by the railway company, but we are also convinced that the traffic is such at Spiro as to justify the requirement of larger and more adequate depot facilities for the handling of the traffic at that point, but since the plans and specifications for the construction of a depot must be submitted to the Corporation Commission, it is unnecessary for us to discuss that feature of this case.

The order of the Corporation Commission requiring a better depot is sustained, and the order locating the depot on the side of the track next to the town of Spiro is reversed.

TURNER, RIDDLE, and BLEAKMORE, JJ., concur.

KANE, C. J. (dissenting). I believe the order appealed from is just, reasonable, and correct, and that the action of the Corporation Commission ought to be sustained in full. In erecting passenger stations at junction cities, the size of Spiro, the safety and convenience of the inhabitants of the city, and the local patrons of the road should be considered as of paramount importance. If the railway company creates conditions at such a point that either the inhabitants of the city and the local patrons of the road, or the through passengers changing cars there, will be subject to inconvenience and danger by the location of its passenger station, it should be required, first, to subserve the convenience and safety of the inhabitants and the local patrons of the road, and, if necessary, take care of the through passengers transferring at such point in some other adequate way.