MATTHEW J. KANE, CHIEF JUSTICE.
J. F. SHARP, VICE CHIEF JUSTICE.
JOHN B. TURNER,
SUMMERS HARDY, }JUSTICES.
CHAS. M. THACKER,

## MISSOURI, O. & G. RY. CO. v. STATE *et al.*

### No. 5957.   Opinion Filed April 11, 1916.

#### (156 Pac. 1155.)

1. **CARRIERS—Corporation Commission—Powers.** By section 18, art. 9, Williams' Const., the Corporation Commission is vested with the power of regulating and controlling all transportation and transmission companies doing business in this state in all matters relating to their public duties.

2. **RAILROADS—Location of Depots—Control by Corporation Commission.** The public duties of a railway company in reference to its depot facilities are set forth in section 26, art. 9, Williams' Const., in which it is required to provide and maintain adequate, comfortable, and clean depots and depot buildings at its several stations for the accommodation of the traveling or railroad-using public; therefore, the facts and elements to be taken into consideration by the Corporation Commission in determining the location of a railway depot must be those which relate to and deal with the considerations above set forth.

3.    **SAME.** If, however, these considerations are ignored, or, if considered, are held to be subordinate, and other elements are considered as paramount, which are aside from either the public duty, or the interest of the traveling or railroad-using public, or the necessities of the operation of the railroad, then an order made with the latter 'for a basis must be held to be unreasonable and without legal sanction.

(Syllabus by the Court.)

*Appeal from Order of Corporation Commission.*

Proceedings before the Corporation Commission against the Missouri, Oklahoma & Gulf Railway Company. From an order of the Commission requiring that the railroad company change the location of its depot, etc., in the village of Salina, the railroad company brings error. Reversed.

*E. R. Jones* and *J. C. Wilhoit* (*Arthur Miller*, of counsel), for appellant.

*William T. Hutchings*, for appellees.

KANE, C. J.   The appellant appeals from an order of the Corporation Commission, which required it to change the location of its depot, house tracks, and other facilities at the village of Salina.

The record discloses that during the year 1912 the appellant commenced the construction ' of a line of railroad from Wagoner, in Wagoner county, Oklahoma, northeasterly through Mayes, Delaware, and Ottawa counties, to Joplin, Mo. After leaving Wagoner, Okla., the railway was located east of Grand river, giving to that section of the country its first railroad. Upon the line of the proposed right of way and on the east side of Grand river was the town of Salina, which had a post office, a few business houses, and a population of perhaps 100 or so. When the right of way was acquired, it was found that the railroad would be about half a mile or

more from the old town of Salina, and the railroad company indicated its purpose to locate its depot a little south and west of the old town. It was found at the time that in order to construct the depot buildings and provide the necessary station facilities for that community, it would be necessary to go back from the section line road intersecting the line of railroad about seven-eighths of a mile in order to reach an open, level country which would afford room for the passing track and house track constructed on either side of the main track, with the house track behind the station. With these plans in view, the railroad company arranged for station grounds sufficient to accommodate its station, section house and other station facilities, house track and passing track about seven-eighths of a mile south of the section line, and on the level ground, and sent its plan for the depot to the Corporation Commission for approval, showing the location of the depot on its right of way. Before the Corporation Commission approved the plans for the depot and the location thereof, certain citizens of the old town lodged a petition with the Corporation Commission setting forth the location of the old town with reference to the railroad and the location of the place where the railroad proposed constructing its depot, and prayed for an order of the Corporation Commission directing the railroad company to locate the depot at the intersection of the section line which traversed the old town of Salina and intersected the line of railroad of the appellant near Grand river. The Corporation Commission set that case for hearing at the old town of Salina, and a complete hearing was had in the matter at that time, at which hearing a number of people living at old Salina advanced reasons why the depot should be located at the point desired near the said section line, and the railroad

company introduced evidence to show the objectionable features from an operating standpoint and from the standpoint of safety generally of the patrons of the road in constructing the depot at the said section line, and setting forth the advantages of locating the same seven-eighths of a mile south on the level ground, pointing out that the location seven-eighths of a mile south of the location desired would only be a fraction over a quarter of a mile farther from the old town of Salina than the place where they desired the depot. After a full hearing the Corporation Commission ordered the railroad company to construct its depot at the location it had chosen, setting forth in said order the reasons why the same should be located at the point selected by the railroad company, and thereupon the Corporation Commission approved the plans for said depot theretofore submitted to the commission, and approved the location of said depot and station facilities.

From this action no appeal was prosecuted by either side. Thereafter the railroad company proceeded to construct its depot and to lay out and construct its passing track, its house track, its section house, and, in short, constructed its station group and all the station facilities that would be required for the community to be served at Salina.

Subsequently, C. L. Pratt, Jr., one of the appellees herein, and others acquired some land a short distance from the station and station grounds of the appellant and proceeded to plat the same and sell lots thereon. After this community, situated about three-fourths of a mile away from the station and station grounds provided by the appellant, had become quite a flourishing little village, said C. L. Pratt, Jr., and others filed a complaint

before the Corporation Commission, asking that the Corporation Commission order the appellant to remove its depot and station facilities from the point at which it had located and constructed the same, north to the point where Ferry street intersects the line of railroad of appellant. Ferry street referred to in this proceeding is the name given by the complainant Pratt and others to the old section line road referred to in the former proceeding; in other words, the point where the complainants in the proceeding from which this appeal is taken wish to have the depot located is the identical place that the complainants in the former proceeding before the Corporation Commission desired it placed. After a full hearing, the commission denied the specific relief prayed for, the part of the order material being in words and figures as follows:

"The application of the complainants to move the depot and switch track facilities will be denied. * * * Under the present condition at Salina, if the passenger trains would stop on flag for the purpose of letting off and taking on passengers, it would be a great convenience, notwithstanding the depot is only three-quarters of a mile away, and an order will be made requiring the defendant to stop its passenger trains on flag at Salina at a point near Ferry street for the purpose of taking on and discharging passengers. It is not the intention of making two stations or depots by this order, but only for a temporary convenience until the townsite controversy is settled, which, in our judgment, will reach its climax within the next twelve months. It is therefore ordered that the Missouri, Oklahoma & Gulf Railway Company stop its passenger trains on flag at the town of Salina near Ferry street for the purpose of discharging and taking on passengers."

From the part of this order requiring it to stop its trains on flag the railroad company appealed, and

later, but after the expiration of the statutory time, the complainants also appealed, the latter appeal being afterwards dismissed by the court. The appellant filed a brief in support of its appeal. No brief was filed on behalf of the complainants. Thereafter the Supreme Court, on the request of the Corporation Commission, and upon motion of the Attorney General, made an order remanding the cause to the commission for the purpose of taking additional evidence.

After hearing this additional evidence, the commission entered an order requiring the appellant, on or before June 1, 1915, to remove its depot and station facilities to the intersection of Ferry street with the railroad track, as prayed for by the complainants, thereby revoking the orders it had twice theretofore made approving the location of the depot at New Salina. From this order of the Corporation Commission the appellant now appeals.

The main contention of the appellant, and the only one we deem it necessary to notice, is that:

"The Corporation Commission erred in making its Order No. 850, for the reason that the same is burdensome, oppressive, arbitrary, unreasonable, and unjust, and without evidence to support it, and is contrary to law."

In our judgment, the order appealed from is unreasonable. In support of this order reversing its former orders, the commission in its opinion says:

"The evidence shows since the last hearing that there have been a good many changes in the two towns."

One of the changes mentioned by the commission in its opinion is the removal of several business and residence houses from the present to the proposed location. Another is, that since the depot was first located, the restrictions on the land whereon the complainants wish the

depot to be located have been removed, and the same has been sold for townsite purposes, so there is now no obstacle in the way of moving the depot and locating it near the section line known now as Ferry street, which goes through the old town. It is true that these changes have taken place substantially as stated by the commission. But as to other conditions which the commission found to exist in its former opinion, there have been no changes. We quote from the second opinion of the commission as follows:

"The situation at Salina is now a townsite controversy, which will result in retarding the growth of substantial business and the town generally, and those who are participating in this controversy will doubtless feel the effects thereof from a financial standpoint. These towns should be consolidated and all surplus land in townsite should be sold off in five-acre tracts or more, to truck farmers, and a waterworks system established so it could be easily irrigated from the pipes and Salina made a shipping point for the class of agricultural products, or which would support a good canning factory. By working out a plan along this line the financial loss to all parties could be stopped. The railroad and the commission would be glad to locate the depot where it was desired as a result of an adjustment along the lines above suggested. The commission has no power to bring this about.

"We appreciate there is a great sentiment among the old settlers around Salina for the depot to be located near Ferry street. Their wishes would have been complied with by the commission had the land at the time of the location of the depot been available. The depot has been located, and from $50,000 to $75,000 has been invested at New Salina, and the people who made these investments had a right to rely on the fact that an order was made, and that six months had expired and the same was not appealed, and that it was permanent. All in-

vestments that have been made in New Salina have been made with due notice to all such investors that the depot was then permanently located. Three-quarters of a mile to be traversed on a good average road is not a great distance."

We think the record and evidence before us is amply sufficient to support the foregoing finding of the commission, to the effect that the situation at Salina is now a controversy between two contending townsites, with scarcely any of the public features over which the commission is authorized to exercise jurisdiction. The location of a railway station, of course, belongs to the public duties of the commission, when the question is, whether its location at a certain point is for the benefit and interest of the traveling or railroad-using public. If, however, these considerations are ignored, or, if considered, are held to be subordinate, and other elements are considered as paramount, which are aside from either the public duty or the interest of the traveling or railroad-using public, or the necessities of the operation of the railroad, then an order made with the latter for a basis must be held to be unreasonable and without legal sanction. *A., T. & S. F. Ry. Co. v. State,* 28 Okla. 797, 115 Pac. 872; *St. Louis, I. M. & S. Ry. Co. v. State,* 31 Okla. 509, 122 Pac. 217.

We think the contention of those who moved from the townsite where the depot was located by order of the commission to the one laid out by Mr. Pratt, one of the complainants herein, is unanswerably met by the part of the former opinion of the commission, wherein they say:

"The depot has been located and from $50,000 to $75,000 has been invested at New Salina, and the people who made these investments had a right to rely on the fact that an order was made, and tha⁺ six months had

expired, and the same was not appealed, and that it was permanent. All investments that have been made in New Salina have been made with due notice to all such investors that the depot was then permanently located."

Another consideration which seems to have had weight with the commission on this hearing was, that the location on Ferry street would be more convenient for a considerable number of farmers residing in a fertile area adjacent to the ford across Grand river. Of this the commission in their last opinion say:

"The evidence shows that just across the river opposite Salina there is a scope of country there about ten or twenty miles long and about four or five miles wide that is said to be the best river bottom land in Mayes county, all within four or five miles of where the people want the depot located. In this scope of country the evidence shows that there were 375 cars of wheat and oats grown there that would likely have gone to Salina had there been a depot and elevator there."

These farmers, it is said, would become patrons of the road, if Grand river were bridged at the ford, and the railway station were removed, as prayed for. This presents the only question of any public interest involved in the case. But as the only effect of the relocation of the station would be to save the farmers from traveling three-quarters of a mile farther after they had crossed the river, it does not seem to us that this slight additional convenience would be sufficient to justify the removal in the circumstances detailed by the commission in their former opinion. As was said by the Corporation Commission in their former opinion, "three-quarters of a mile to be traversed on a good average road is not a great distance." That this three-quarters of a mile additional travel is also considered of slight consequence by the farmers themselves is shown by the testimony of Mr.

Gideon Morgan, a very intelligent witness on behalf of complainants, who, in our judgment, states the real interest of the farmers in the controversy fully and concisely, substantially as follows:

"I am a member of the House of Representatives, representing Mayes county; I live on the west side of Grand river, as the other witnesses. If the bridge was built over the river at Old Salina, a good deal of freight going to Pryor Creek would go to New Salina. It is now difficult to come to New Salina by fording the river on account of the heavy bank to pull in crossing the river. If the depot was located at Old Salina I believe the bridge would be built. Of course, we haven't made much in the past three or four years, hardly enough to pay our taxes and interest on our debts, but it is to our interest to build the bridge. Some times you can't ferry the river, and some times you can't ford it. A man might come across in the morning and in the evening when he went to go back, he couldn't ford or ferry. I do most of my trading with Mr. Fox and Mr. Ballew, who live at New Salina; I trade with them because they treat me right. I trade some with all the merchants, but principally with them. If buyers were at New Salina and the bridge were built over Grand river, people living on the west side would have a lot of stuff to ship over the railroad. Of course, if the buyers were here and the bridge was built we would ship it out on this present depot on the railroad anyway. We are closer to the depot as it is now located than to Pryor. I would ship from the present depot if they had buyers. If the commission would definitely state to the people that the depot would not be removed, I think the whole controversy would end. If I knew positively that the depot was not going to be removed, that would end it for me, because I would just think I would come down here because it was nearer. We haven't built the bridge over Grand river yet. The town of Pryor is fighting the bridge. If the commission would just settle this matter, it would

end it so far as the farmers are concerned. We would rather have the depot at Old Salina. At the present time there are no buyers at either town and not very many in them. I think that is caused more than anything else by the drouths."

So, we see, that the only benefit that would accrue to the farmers from the removal would be a shorter haul of their products of three-quarters of a mile. It is true that on account of this alone they would rather have the depot at or near the ford. But they say if the bridge were built and there were buyers they would ship their products from the present location anyway. Their principal concern, it seems, is to have the matter finally settled. If the commission would just settle the matter, they say, it would end it so far as the farmers are concerned. On the whole, we do not believe that the changed conditions are of sufficient weight to overcome the cogent reasons of the commission supporting their former opinion, or to justify the order of removal at the expense of those who settled upon the present site and made improvements there, upon the strength of the former order, and of the railway company, which erected its station and put in its facilities at this point at great expense in pursuance thereof.

There is testimony on behalf of the railroad, which seems to us to be uncontradicted, to the effect that it would cost $6,500 to remove the station from its present location to the new townsite. The commission is of the opinion that the removal could be effected for about $3,000, but even $3,000 is too great an outlay to impose upon a railway company in the hands of a receiver and operating at a loss, in a controversy wherein the public interest involved appears to be merely negligible.

For the reasons stated, the order of the Corporation Commission is reversed.

All the Justices concur.