## TULSA ST. RY. CO. v. OKLAHOMA UNION RY. CO.

No. 9629.—Opinion Filed April 15, 1919.

Rehearing Denied Oct. 7, 1919.

(Syllabus by the Court.)

1. **Corporation Commission—Constitutional Jurisdiction.**

By section 18, art. 9, Williams' Constitution, the Corporation Commission is vested with the power of regulating and controlling all transportation and transmission companies doing an intrastate business in all matters relating to their public duties.

2. **Street Railroads — Corporation Commission—Powers—Junction of Two Roads.**

The statutes of this state confer power upon the Corporation Commission to investigate all complaints in reference to the physical connections and transfers at all junction points, incorporated towns, villages, and communities, and upon investigation of such complaint, or upon its own motion, it may require any street railway company to make physical connection, or establish and maintain such transfer facilities as the public interests may reasonably require, and as may be reasonable and fair to the companies to be affected; and in a case where the complainant in its complaint prays for an order to be made permitting it to use jointly with another street railway its track or line and span wires, and fixing the terms of such joint use, the commission upon a hearing of such complaint, after proper notice, may make a valid order that a transfer system be installed by the two companies, designating the point of transfer and fixing the rate to be charged for joint service and providing how and when a division of such charges between the companies may be made.

3. **Same—Appeal From Commission's Orders—Presumptions.**

Record examined, and it is held that this case comes within the rule that "prima facie, just, reasonable, and correct," in section 22, art. 9, of the Constitution, is a presumption arising upon the finding of the Corporation Commission, that the order based upon such facts is presumed on appeal in this court to be just, reasonable, and correct, subject to be overcome or rebutted by the facts in the record, as weighed and found by this court in reviewing the same.

Appeal from order of Corporation Commission.

Action before the Corporation Commission, by the Tulsa Street Railway Company, against the Oklahoma Union Railway Company. To review an order of the commission, the complainant appeals. Actions of the commission affirmed.

J. P. O'Meara, Chas. E. Bush, and A. F. Moss, for plaintiff in error.

A. J. Biddison and Harry Campbell, for defendant in error.

JOHNSON, J. This is an appeal from an order of the Corporation Commission. This appeal brings in review an order of the Corporation Commission made on the 14th day of September, 1917, in an action instituted before the Corporation Commission by the plaintiff in error, against the defendant in error (for convenience the parties will be designated as complainant and defendant as they appeared before the Corporation Commission), asking for an order to permit complainant to use jointly with the defendant the railway line on the approaches to the reinforced concrete bridge across the Arkansas river which is located within the city of Tulsa, Okla., and to permit the complainant to use jointly the span of wires now in place on said bridge approaches, for the purpose of supporting the trolley wires of the complainant, and for an order fixing the terms under which the complainant should jointly use with the defendant said tracks and span wires, and for an order covering the schedules and operation of cars over said tracks and said approaches and over the reinforced concrete bridge controlled by the county of Tulsa, Okla.; the said tracks on said approaches being of a length of 529 feet.

The essential facts involved in this case are substantially as follows:

Both plaintiff in error and defendant in error are operating street car lines in the city of Tulsa, and the defendant in error is constructing an interurban line from Tulsa, through West Tulsa and Red Fork, to Sapulpa. It has acquired the Sapulpa Electric & Interurban line from Sapulpa to Kiefer. The Tulsa Street Railway Co. was operating under an ordinance or franchise dated the 5th day of April, 1907, giving Chas. H. Bosler and his assigns the right to construct a street car line on the streets of the city of Tulsa, except certain streets. This ordinance was accepted by Bosler at that time.

Said ordinance provided as follows:

"That at the expiration of ten years from the date of acceptance of this ordinance, any or all streets herein named not in actual use by the grantee for street railroad purposes shall revert to the city of Tulsa, and said streets shall not be bound by this franchise."

In March, 1917, Tulsa county completed a new bridge across the Arkansas river between Tulsa and West Tulsa, and thereon a railway track. The defendant, Oklahoma Union Railway Company, constructed a track

on the approach to each end of said bridge and entered into a contract with the county commissioners to use said bridge for the sum of $200 per month. The length of track in the approaches to said bridge constructed by the defendant in error was between 500 and 600 feet.

After said track was laid and said contract with the county commissioners was procured by the defendant, it commenced running its cars over said bridge to and from West Tulsa.

The plaintiff in error, Tulsa Street Railway Company, was also trying to cross the said bridge; but the defendant acquired possession of the approaches, laid its tracks thereon, connected with the track on the bridge at each end, procured a contract from the county commissioners for that purpose, and established its right to the use of the approaches and the bridge.

The complainant Tulsa Street Railway Company's amended complaint is quite lengthy, and in paragraph 3 thereof will be found allegations upon which complainant based its right of action, but the following quotation we think contains a sufficient summary thereof for the purposes of this opinion:

"Complainant further alleges that it is necessary in the operation of its said line into what is known as West Tulsa, to use about five hundred and thirty-nine (539) feet of the track of the defendant over the approaches to said bridge in order to operate its said line of street railway from the main part of Tulsa into West Tulsa, and this complainant has offered to pay to the defendant any reasonable sum for the right to use, in connection with the defendant, the street railway tracks upon the approaches to said bridge, and has offered to enter into any reasonable contract to maintain and keep in repair the tracks on said approaches, and has offered to install any and all reasonable safety devices necessary for the protection of the defendant and the public at the junctions or connections on said line, and has offered to pay any reasonable sum to the defendant for the use of the span of wires on said bridge and approaches which are erected for the purpose of sustaining the trolley wires over and across said bridge and approaches.

"Complainant further alleges that the joint use of said tracks on said approaches would not interfere with the schedules of the defendant in the operation of its said line of railway, but would be a great benefit to the public who are compelled to go to and from West Tulsa from the main portion of Tulsa.

"Complainant further avers that there is no other bridge or highway over which the plaintiff can cross the Arkansas river except the bridge mentioned herein.

"Wherefore, this complainant prays that the aforesaid defendant be required to answer the charges herein, and after due hearing and investigation, that an order be made permitting this complainant to use jointly with the defendant the railway line on each approach to the said reinforced concrete bridge across said Arkansas river, and to use jointly the span of wires now in place on said bridge and approaches for the purpose of supporting the trolley wires of this complainant, and for an order fixing the terms under which this complainant shall jointly use said track and span of wires, and for a further order covering schedules and operation of cars over said track on said approaches and over said reinforced concrete bridge, and for such other and further order as this commission may deem necessary and just."

On July 24, 1917, a hearing was had by the commission, at which time the following conclusions and order were made:

### "Order.

"The pleadings, the transcript and the briefs in this case have all been reviewed and considered by the commission, but at this time expression of opinion upon the merits of the case is deferred.

"The commission finds that if both the lines under consideration should extend their service to West Tulsa such act upon the part of the line, which is not at present operating in West Tulsa, would, as a matter of course, supplement the present service and thus afford an added public convenience, but on this point the commission is also of the opinion that the public would be equally as well served and the public convenience thus promoted if some arrangement or agreement could be reached by the two companies whereby the patrons of the Tulsa Street Railway Company could reach West Tulsa without being subject to excessive toll for the payment of double fare.

"The commission for the reason stated, has decided to defer further consideration of the case and the rendition of opinion and final order therein until the parties have been afforded the opportunity of carrying out the suggestion above made; and hence the commission issues this order.

"Wherefore, the premises considered and the commission being fully advised, it is ordered that a copy of this paper be served on both parties hereto; that thereafter they both forthwith confer with each other and thereupon appear before this commission at its office in the State House at Oklahoma City, Oklahoma, on the 6th day of August, 1917.

"The said parties are hereby advised that the matter of proper fare or charge for transportation or service between Tulsa and West Tulsa or between West Tulsa and Tulsa will be considered and that the matter of requiring transfer tickets by one company good over the line of the other company

when used in trips between the places afore-said, will also be considered.

"And it is so ordered.

"Done at Oklahoma City, Oklahoma, in the regular order of business on this the 24th day of July, 1917."

Following this, the parties filed their respective statements and objections. and on September 14, 1917, a final hearing was had by the commission, at which time the commission made its final statement, findings of fact, and order, which were as follows:

"The parties are public service corporations operating street cars in Tulsa, Okla. The Tulsa Street Railway Company asks for a connection with the Oklahoma Union Railway Company's rails and other facilities except trolley wire on the approaches of the Arkansas river bridge between Tulsa and West Tulsa. The Oklahoma Union Railway Company has a single track railroad on the approaches to said bridge. Tulsa county owns a bridge with a single track thereon connecting the aforesaid track on the approaches.

"The north approach is 2:5 per cent, descending grade, and the connection desired by the complainant is 300 feet north of the bridge. The connection desired on the south approach is 240 feet from the end of the bridge and is 1:5 per cent. descending grade. The bridge proper is 1,470 feet long. The complainant proposes to bear the expenses of making connection with the defendant and to install its own trolley wire on supports owned by Tulsa county and the defendants, and, in addition, to pay defendant rent for the use of its rails and fixtures and rent to Tulsa county for the use of the bridge and track thereon.

"The embankments or approaches and bridge were built by Tulsa county. The county leased the use of track over the bridge to the Oklahoma Union Railway Company, which company operates cars between Tulsa and West Tulsa.

"The complainant showed that it was operating about 10 miles of street railway in Tulsa and that it had laid 3,000 feet of track in West Tulsa. And it proposes to install a 15-minute service between Tulsa and West Tulsa if it can obtain access to the bridge.

"The said bridge has a 30-foot roadway with car track in center. The Oklahoma Union Railway Company is now operating a street car system in Tulsa, and, as above stated, it operates between Tulsa and West Tulsa, and its interurban line extends from Tulsa to Red Fork while it has 12 miles of line in operation between Kiefer and Sapulpa. When these lines are connected defendant will have 31 miles of railroad. All the interurbans will operate over the Arkansas river bridge.

"The defendant expects to install a 30-minute service between Red Fork and Tulsa and hourly service between Sapulpa and Tulsa. It will then have seven cars each way or 14 cars in all passing over said bridge every hour.

"The defendant is now carrying from 4,000 to 5,000 passengers a day across the bridge. It requires two minutes to cross the bridge proper, while considerable more time is needed in passing over the bridge and approaches or between the proposed points of connection between the complainant and defendant.

"Business on said bridge is already congested, and the indications are that in the near future the public will require the entire use of said bridge and the railways will have to abandon the use thereof.

"The commission after considering the testimony heard at the first hearing was of the opinion that in consideration of the heavy traffic over said bridge the joint use of the same by the railway companies is impractical. The complainant testified that its cars could follow the cars of the defendant company over the bridge and that schedules could be so arranged that both companies could operate thereon, but, as indicated, the commission does not consider this feasible nor advisable. The commission is of the opinion that the public had better have a safe and satisfactory service by one company than unsafe and unsatisfactory service by two companies in the matter of transportation between Tulsa and West Tulsa.

"The order above set out was issued, and pursuant thereto the cause came on for hearing and was finally submitted on August 13, 1917. It was agreed that A. I. Thompson, Esq., engineer of the commission, should proceed to Tulsa and investigate and report on the propriety of installing a transfer system between the companies in Tulsa. The said engineer had, prior to the original hearing, visited the bridge and had taken notice of the traffic conditions, and he testified as a witness in the case. Upon returning to Tulsa and reviewing the lines of the companies and the bridge, he made a report, a copy of which was served on both companies, the original being filed as a part of the papers in this case.

"Mr. Thompson's report defines the location of the different street car systems in Tulsa noting the length of lines and streets traversed. At present the Tulsa Street Railway Company and the Sand Springs Interurban Railway Company (the latter being not involved herein) use a transfer at Third and Maple streets which is on the basis of a five-cent fare, each company receiving 2.5 cents on transfers collected by the other company. Under this arrangement one can ride 7.7 miles for one five cent fare.

"The transfer system is used in Oklahoma City and in said city one can ride 10.76 miles for one five-cent fare.

"There is an immense amount of street car traffic between Tulsa and West Tulsa. In the latter place a great many industrial

concerns are located employing many hundreds of laborers who reside in Tulsa, some along the lines of one company and some along the lines of the other company. At the present time those residing along the lines of the complainant company have to pay a double street car fare in going to and from their work at West Tulsa.

"The engineer of the commission suggests a point of transfer at Fourth and Main streets, Tulsa, and the commission finds that this is the logical point for transfer between the lines of the two companies. The defendant company suggested a point of transfer which is not practical, the lines of the companies being too far apart, the street being unpaved, and the track in each instance not being visible to a party at the other track. If the point of transfer be at Fourth and Main streets, the longest distance a passenger could be carried for one fare is 5.5 miles, of which 3.5 miles would be on the Tulsa Street Railway Company and 2 miles on the Oklahoma Union Railway Company. Most of the traffic, however, will be for a much shorter distance and will involve, to a great extent, the transportation of the many hundreds of laborers working in the industrial concerns at West Tulsa. A great advantage to the public will accrue if the transfer system is installed, the point of transfer being Fourth and Main streets, the basis of transfer being the five-cent fare, the same being voluntary rate of the defendant company heretofore charged, and now in effect.

"Wherefore, the premises considered and the commission being fully advised, it is ordered that a transfer system be installed by the two companies on or before October 1, 1917; that the point of transfer be Fourth and Main streets in Tulsa, Okla., (at the present time there is no use of designating a point of transfer on West Tulsa side, because the complainant is not in readiness to operate over its tracks in West Tulsa, and when it completes its West Tulsa trackage a point of transfer can be designated); that the basis of transfer be the five-cent fare; that the division of the fare be one-half to each company; that settlements be made monthly not later than the 10th day of the calendar.

"Now as both companies will be receiving benefits from the Tulsa county bridge, and as the Oklahoma Union Railway Company is now paying Tulsa county $200 per month as rental for the use of the bridge for street and interurban railway purposes, the Tulsa Street Railway Company should bear a portion of this rental to equalize the indirect benefits received."

On the 17th day of September, 1917, the motion for new trial was overruled. Exceptions being saved, the complainant was given time to make and serve case-made and to file supersedeas bond, which was accordingly done, and the order complained of is now properly before this court on appeal from the Corporation Commission for review.

From the order made by the commission on the 4th day of September, 1917, complainant appealed to this court and assigns error as follows:

"(1) That said commission erred in overruling the plaintiff in error's motion for new trial.

"(2) Said commission erred in not rendering judgment in accordance with the prayer of the plaintiff in error, and specifically erred in finding that the public would be equally well served by a transfer system as indicated on pages 105, 106, and 107 of the case-made.

"(3) The commission erred in not finding that the plaintiff in error has as a matter of law the right to use the bridge across the Arkansas river between Tulsa and West Tulsa.

"(4) The commission erred in attempting to make an order not supported by the pleadings and not asked by either the plaintiff in error or the defendant in error.

"(5) The commission has no jurisdiction to make or render any judgment except a judgment supported by the pleadings of either the plaintiff or defendant, and the judgment is not supported by the pleadings of either party to this litigation.

"(6) The commission erred as a matter of law in finding and adjudging that a transfer system be installed by the two companies on or before October 1, 1917, from the corner of Fourth and Main streets, and that the basis of transfer be a five-cent fare, and that the division of the fare be one-half to each company, and that a settlement be made monthly not later than the 10th day of the calendar.

"(7) The decision of the Corporation Commission complained of practically confiscates and takes without process of law from the plaintiff in error all its trackage and equipment in West Tulsa, and renders the investment therein of no value.

"(8) The Corporation Commission went outside the issues raised by the pleadings and attempted to arbitrate the case between the plaintiff in error and the defendant in error, and failed and refused to decide the questions of law which were raised by the pleadings, any of the questions of law involved."

We will consider all the assignments of error under two propositions:

(1) Had the commission jurisdiction to make the order complained of?

(2) If so, was the order reasonable and just?

Section 18, art. 9, of the Constitution, provides:

"The commission shall have the power and

authority and be charged with the duty of supervising, regulating and controlling all transportation and transmission companies doing business in this state, in all matters relating to the performance of their public duties and their charges therefor, and of correcting abuses and preventing unjust discrimination and extortion by such companies; and to that end the commission shall from time to time, prescribe and enforce against such companies, in the manner hereinafter authorized, such rate, charges, classifications of traffic, and rules and regulations, and shall require them to establish and maintain all such public service, facilities, and conveniences as may be reasonable and just, which said rate, charges, classifications, rules, regulations, and requirements, the commission may, from time to time, alter or amend."

Rev. Laws 1910, sec. 1190, also provides:

"The Corporation Commission shall have full power, and it shall be the duty of said commission, to investigate all complaints in reference to the physical connections, transfers, depots and switching facilities at all junction points and incorporated towns, villages and communities, and upon investigation of such complaint or upon its own motion, the said commission may require any railroad companies to make such physical connections or to establish and maintain union depots, transfer and switching facilities as the public interests may require."

Sess. Laws 1913, c. 130, sec. 1, also provides:

"The Corporation Commission shall have the power and authority to prescribe and enforce against any railroad or transportation company, operated in whole or in part within this state, such rates and charges for the transportation of passengers between points within this state as may be found to be reasonable and just after due notice and hearing, as now provided by the Constitution for prescribing freight rates and regulations."

This court in construing the section of the the Constitution quoted supra, in the case of A., T. & S. F. Ry. Co. v. State et al., 23 Okla. 217, 100 Pac. 13, 21 L. R. A. (N. S.) 908, in an opinion by Mr. Justice Williams, said:

"There can be no question but that the Legislature of the state, unless otherwise in the organic charter thereof restricted, has the power to require railroad companies, in the carrying on of their business as common carriers, to afford every reasonable facility and convenience for the transaction of such business with the patronizing public. The only limitation upon such power is that the duty imposed must relate to the matter which is within the domain and a proper subject of police regulation, and that it is reasonable."

Again, in the case of St. L. & S. F. R. Co.

v. Williams et al., 25 Okla. 665, 666, 107 Pac. 430, the same learned Justice said:

"The Corporation Commission, by virtue of the provisions of article 9 of the Constitution, is invested with extraordinary powers, being authorized to exercise not only legislative, but also executive, administrative, and judicial powers * * * Though it may be necessary for the commission to make and preserve a record, it does not follow that a strict or narrow rule as to procedure shall prevail as in trials at common law. Interstate Commerce Com. v. Baird, 194 U. S. 25, 24 Sup. Ct. 563, 48 L. Ed. 860. The fact that the petition may have asked for the regulation of interstate commerce, yet if the order of the Corporation Commission made thereon did not interfere with interstate commerce, the commission had jurisdiction to enter same. Its jurisdiction does not depend upon any special form of pleading, the test being, not the relief prayed for, but that granted. In fact, it is not essential for any petition to be filed, but that notice shall be had."

The same rule is announced by this court in St L. & S. F. R. Co. v. Zalondek et al., 28 Okla. 746, 115 Pac. 867; M., O. & G. Ry. Co. v. State, 53 Okla. 341, 156 Pac. 1155. A very exhaustive discussion of the questions involved will be found in State of Florida v. Atl. Coast Line Ry. Co., 32 L. R. A. (N. S.) 639 (56 Fla. 617, 47 South. 969).

We have examined the entire record, including the testimony of the witnesses and the report of the engineer, which is very full and complete, covering every detail of the physical facts surrounding the situation of the properties of the parties as well as the bridge and the approaches thereof, the number of passengers handled by each of the parties in a given period, the number of transfers and the revenue derived therefrom by each, the amount of travel over the bridge, the congested condition thereof during the daytime and nighttime, the time required to make the crossing of the bridge by the cars, and the number of cars that are now required by the defendant to handle the traffic and maintain an adequate schedule for the convenience of the public and would be required if the joint operation were installed, and in concluding his report the engineer said:

"I deem it what the people require is service, and contend that one company can operate over the single track between Tulsa and West Tulsa and give better service than two companies. It is immaterial what kind of a block system was installed; two systems would be bound to cause delay in operating over bridge. If the commission ordered connection on the east approach of the Arkansas river bridge as prayed for by the Tulsa Street Railway Company, they would still be unable to operate until they had permanent injunc

tion dissolved which forbids them to operate from Twelfth street to desired connection. I think the proper solution is to give the public equal transportation facilities between Tulsa and West Tulsa, and a transfer system at Fourth and Main between the Tulsa Street Railway Company and the Oklahoma Union Railway Company, would do this. The Tulsa Street Railway Company transfer would be good for continuous passage on the lines of the Oklahoma Union Railway from Fourth and Main to Center avenue in West Tulsa. The Oklahoma Union Railway transfer would be good for a continuous passage from Fourth and Main on any line of the Tulsa Street Railway. The Tulsa Street Railway and the Oklahoma Union Railway are charging a five-cent fare. About the longest route on the Tulsa Street Railway is 5 miles, and on the Oklahoma Union Railway 4½ miles. A passenger can now get on the Tulsa Street Railway at Kendall College, and transfer to Sand Springs Interurban at Third and Maple, and ride 7.7 miles for five cents, under the present transfer system between these companies. If a transfer between the Tulsa Street Railway Company and the Oklahoma Union Railway Company at Fourth and Main be established on the same basis the longest route a passenger could be carried is 5.5 miles, of which 3.5 miles would be on the Tulsa Street Railway and two miles on the Oklahoma Union Railway.

"Both railway systems in Tulsa are handicapped in trying to operate on a single track, and is now double-tracking. The Oklahoma Union Railway Company has submitted a proposition to the city of Tulsa to extend its track from Elwood on Fourth to its line along the Frisco. This extension, when installed, will materially assist in operating cars from Main street to Center avenue in West Tulsa. If the company would double-track from Elwood to Main on Fourth, it would benefit operating conditions.

"As I formerly stated, I think it is only a matter of time until all railroads will have to cease using the present highway bridge as the public will demand its full capacity, and that the street and interurban lines will be compelled to provide their own bridge. It would be of advantage to the Tulsa Street Railway Company to extend its line from Twelfth and Frisco to Fifteenth and construct a bridge across the Arkansas river between Fifteenth street in Tulsa and Mitchell in West Tulsa. It is going to be necessary for the Oklahoma Union Railway Company to increase its service in car capacity and in time in operating between Main and Center avenue in West Tulsa. It seems about as fast as they can operate cars over the bridge and clear it is from nine to ten minutes. This they will be unable to do to an advantage until they get their loop completed on Fourth street and double to Main, and double-track from Mitchell to Center avenue in West Tulsa. It is impossible to keep schedule and give adequate service on a single track unless same is operated on a loop. I am attaching a map to the commission's report showing location of all street and interurban lines now in operation in Tulsa, and West Tulsa.

"As I advised heretofore, I have attached to commission's report the Tulsa Street Railway and the Sand Springs Interurban transfers. I can see no reason why the same forms of transfer are not applicable between the Tulsa Street Railway Company and the Oklahoma Union Railway Company. I fail to see where there would be any difficult accounting feature in handling these transfer coupons. I do not think a transfer system as outlined heretofore is unreasonable. As noted, the longest haul on a transfer would be 5.5 miles, which you can see from the map would be a very rare occurrence. In Oklahoma City, a passenger by using the transfer system now in vogue, can ride 10.76 miles for one five-cent fare.

"If this transfer system is installed, both companies will be receiving benefits from the Tulsa highway bridge, and as the Oklahoma Union Railway Company is now paying Tulsa county $200 a month rental for the use of the bridge for street and interurban railway purposes, I believe it should be reimbursed by the Tulsa Street Railway Company for a portion of this rental to equalize the indirect benefits received by the Tulsa Street Railway Company. A fair amount of this rental to be paid by the Tulsa Street Railway Company to the Oklahoma Union Railway Company would be the ratio the transfer tickets collected by the Oklahoma Union Railway Company bears to the total number of passengers carried over the bridge. This settlement should be made not later than five days after the last day of each calendar month."

We think that the authorities cited are conclusive upon the two propositions under consideration—had the commission jurisdiction to make the order, and was the order reasonable and just—and that both questions must be answered in the affirmative, which are the only questions involved in this appeal, or at least are the ones that should and must control.

That the commission was legally authorized and empowered to hear and determine this case we think there can be no doubt. Then was its order sustained by the evidence in the record, supported by its prima facie presumption, to such an extent that we cannot say that it is unjust and unreasonable? After a careful reading of the record, we must answer in the affirmative.

The actions of the commission are in all things affirmed.

All the Justices concur.